May it please the Court, my name is Jack Sheridan. I'm the attorney representing Dr. Walter Tamosaitis in this whistleblower case. Your Honors, on June 30th, 2010, Dr. Tamosaitis knew two things to be true. The first was that he and his entire R&T organization was going to be transferring to a new organization to do new work on the WTP. He was going to head an organization that was going to focus on technical activities necessary to address what they call operational risks in the preparation of the cold commissioning. That's at 707 of the ERs. But he didn't make it because he also knew on that day that there were some serious problems that had not been addressed. That the M3 closure was going to happen even though he, as the head person in charge of deciding those technical issues, he knew that they had basically not done adequate design work in order to safely claim that the closure should happen. So he did two things. He went to a meeting, which we've referred to as the joke on the cherry meeting, where he basically listed 50 items that he believed still had not been done to prevent arguing that the closure should not happen. And then he sent two e-mails to the consultants in the case and told them, basically, he raised claims that indicated to everybody that he was concerned about closure. Closure went ahead. It happened. And URS and BNI got a $4 million bonus as a result. There was $6 million on the line. This is all very interesting. And I read the story, the background story. Okay. The original complaint that was filed, the briefs. Tell me why we should reverse on any one of these issues that the district court decided. Yes, Your Honor. Where did the district court go wrong, let's say, on the jurisdictional issue? All right. Well, they went wrong in several ways. The first one is on the kick-out provision, of course. And we did everything right. On the kick-out provision, Congress has basically said that because the Department of Labor can't be counted on to do an adequate investigation in what is supposed to be a very quick, efficient, and easy way for whistleblowers to get redress, if you go a year, you then can kick out into federal court. We did that. If you look at the language of the statute. You did it with regard to the complaint that you first filed. And I'm willing to assume for present purposes that the URS mistake, which was, didn't matter because URS answered on its own behalf, on behalf of the actual employer. So, but what about the, and BNI is out of here because they're in the state court. They took them out, right. So, it's basically the Department of Energy that we're talking about. When was the first complaint filed against them? Well, that was around December. But remember that the way that this is set up. It was December 15th, right? That's right. In December, we had enough evidence. 2010, right? That is correct. Just so we have our dates, right? Yes. So, that's right. December 15th, 2010. Since we're dealing here with dates, it's sort of important to specify specific dates. I will do that. I will do that. All right. So, what happens is when you file these type of complaints, you really don't have any rights like you would in a civil context. There's no right to discovery. December 15th, 2010. It doesn't take much discussion or genius to figure out what the year from that is. Isn't it December 15th, what, December 14th, 2011? Sure. Okay. So, was anything filed after that date against you? Well, we kicked out in October. Okay. Which was early. I mean, you didn't have to kick the whole thing out, but you did. Well, it was our view that the statute required us to wait a year. And it was our view that it didn't require us to restart the clock. If you look in the language of the statute, there's no place in the statute where it says that you have to wait a year every time you join an additional defendant. Well, except that the complaint is filed against particular individuals. Well, that is true. That is true. But Congress could have said that. If you look at the language of the statute, it says, no employer may discharge any employee or otherwise discriminate against any employee with respect to, and then it goes on to terms and conditions of employment. That's the substantive question. And as to the substantive question, I think you're on fairly strong ground. But this is not a substantive question. Okay. Well, if you look at the procedure, it says, if the secretary has not issued a final decision within one year after the filing of the complaint and there's no showing of bad faith, then you can do it. It doesn't say that you restart the clock. If you look at ‑‑ But the complaint, what is the complaint? The complaint is a complaint against a particular person. The secretary may order such person to provide compensatory damages. I mean, it runs to a particular person. Well, it does run to a particular person, but look at the timelines. The timelines, if you look at what Congress intended, they say that within 30 days the DOL has to respond. Within 90 days, they have to issue an order. So this whole idea of having the one year to kick out, it's not to protect the DOL. It's not to protect the defendants. It's because Congress in its wisdom realized that the DOL doesn't always do what they're supposed to do. So if you filed ‑‑ if you filed and you waited a year, you can go into federal court. They have a year to try to do it. Who does? DOL. DOL has a year from the filing of the complaint. You filed against DOE on December 15th, 2010, and you didn't wait a year. That's your problem. But it's only a problem if you're going to restart the clock. But I would suggest to Your Honor, respectfully, there's no place in the statute that says you have to restart the clock. If the court looks at ER 10 ‑‑ Well, if you file a claim against DOE, you're supposed to allow, the statute says you're supposed to allow them a year, the Department of Labor, to adjudicate or to resolve that claim. And you didn't. Well ‑‑ Now, you were still pending a year later. Is that good enough? Is that good enough? Is the fact that the case was still pending a year later? It's all good enough, Your Honor, in our view. For example, it says, within 30 days of the receipt, the secretary shall complete such investigation. Right. Shall notify Rainn, the complainant, and the person alleged to have committed such violation. Right? Right. That person didn't even exist after 30 days. The Department of Energy wasn't even there. But that person did exist long before the kickout. It was seven months before the kickout. My question is, I mean, similar problems have arisen, for example, under Title VII. And the standard under Title VII is fairly loose with regard, but of course the difference under Title VII is that the agency is never going to issue any, give any relief, is not authorized to give any relief anyway. Right. So there's a reason to be somewhat loose because they're not actually deciding anything. Right. There's also FTCA, right? There's also what, Your Honor? FTCA, Federal Tort Claims Act. Right. Where you can't file too early. You've got to give the agency, what, six months or whatever the time is to decide. And if you file early, you're out of luck. Right. So why isn't this just like FTCA? Because this is the one-year kickout provision was written for the whistleblower. It was written so the whistleblower didn't have to language it in the DOL form. Remember what's supposed to happen in that year. Well, it does two things. I mean, if it really wanted to give the whistleblower a chance to go to district court right away, it would have said go to district court right away. It does two things. One thing it does is we give the agency one year to decide, and then after one year we give the whistleblower a chance to go to district court. I mean, it doesn't do just one thing. Except that if you look at ER 1087, Your Honor, it is, and would Your Honor be willing to take handouts that have been showed to the other side? Have you? Is there objection? No. It's fine. Give us the clerk. Thank you. So the first exhibit is ER 1087, which is in the record. This is called paper. Thanks. And it's the letter, it's the October 14, 2011 letter from the Department of Labor, acknowledging that we're kicking out. On it in the reference line are all the parties that have been part of the case, and the DOL says in the yellow highlighted section, look, over one year has passed since the complaint was filed. Under the ERA, the secretary has not issued a final decision within one year of the filing, and there's no showing of delay or bad faith. So this is like a right to sue letter in the Title VII context. We basically told them we wanted to appeal, wanted to take it to district court, and they said yes, and then they go on to say, and we're going to dismiss your case because you've chosen that forum. So clearly from the Department of Labor's perspective, we did what we were supposed to do. The other thing that I wanted to show you, and I wanted to let the court know, the second page that has the ---- Well, they could have made a legal judgment that there is bad faith, I suppose, but they didn't. But they did take action, and see, Your Honor, let's say that ---- They will say it's okay to sue the Department of Energy or whatever. Well, if that was the case, right, if we had to restart the clock every time, wouldn't we expect the Department of Labor to give a different case number to this as though it's a new case? They didn't. There's one case number. No, no, no. But I would say, I would suggest to Your Honor that if ---- Well, it can't affect what the Department of Labor does or not. It can't affect our jurisdiction. If we don't have jurisdiction over this because it's filed too early, how the DOE happens to handle it is of no consequence. I agree. I agree that really is what's at stake here. But if Your Honors read it that way, you're reading something that Congress didn't intend because Congress doesn't say that everybody gets a year. Congress said the whistleblower has to wait a year. If this was written for the defense or for the DOL, then it would be written differently. And if you look at the legislative history ---- It has to wait a year from what? To file in federal court. A year from when? From the filing of the original complaint. Okay. So the original complaint against DOE was filed December. You're right. But, Your Honor, keep in mind, think about this too. We were so lucky that we had a state claim going, that we could do discovery. The average person doesn't have it. Let's say DOL was actually doing their job. Let's say they had identified, as they did, Your Honor, pointed out substantively, that it's a different URS that's the real defendant. And those people participated, right? Then one would expect DOL would jump in and go, hey, DOE, we've come across evidence that shows you guys were part of the problem as well. And, therefore, we're adding you to this complaint. There's nothing that says they can't add them, and there's nothing that says that they can't, that they have to wait a new year, another year. It's just not in the. Do you want to go on to other things, please? Yes, absolutely. Let's go back to the question that Judge Bergeron skipped over and the fact that the complaint was filed in the wrong name. Yes. Well, so keep in mind that when we file this complaint, again, we have 30 days under TSCA to file. We just file. All we are doing at that time is trying to preserve his rights under time. Again, we have no discovery rights. All we know is the information we get from our client. It's simply a notice question. And, I mean, here the defendant obviously was on notice, and they never said, you know, we're not going to answer you because we're the wrong entity. They went and they did the entire response. They jumped right in. That's exactly right. And, as a matter of fact, I think, and we point this out in our briefing. Is it just a notice question? I mean, it says you're supposed to file against specific entities. You're not supposed to file. I mean, if you said we filed against Bechtel. Right. I mean, that wouldn't have done it. Or you said you filed against General Motors, right? It has to be against specific entities. And, in fact, you filed against the wrong entity. Well, the focus is on filing the complaint. And, remember, this is a streamlined process. Well, not just a complaint against anybody. It has to be a complaint against an employer. If the entity name is not an employer, then I don't see how it helps you. Well, it helps because, substantively, URS jumped in immediately and said here we are and waved their hands and said yes. But not only that, Your Honor, it's a bit of an unfair. So what is it? Is this a waiver argument? Well, I guess it's one could frame it as a waiver, but one could also say that, in fact, the focus of DOL is to, remember, DOL serves the complaint, not us. They served it on an organization that then responded and said you got the right guys. So I don't think that's in any way a waiver. But also, Your Honor. Let's say they got the name entirely wrong. Let's say that you had filed against Bechtel. And DOL sends it to URS. URS, yeah. URS. You know, they never get mentioned in your complaint, but DOL looks at it and says we're going to send this to URS, even though they are not even named. That would be good enough? Well, I think you mean if there's actual notice, it's good enough. I'm passing the same facts. You file, you mention only Bechtel. DOL looks at it. The year passes and we sue the other people, we lose, I think. Because there's never been any notice to the company that is the focus. But keep in mind that in this particular case. No, no. DOL looks at it and says, well, we figured it out, we'll send it to URS. Right. But also, Your Honor. I'm sorry, what is your answer to that? You lose. We lose if there's never notice to the company that is the company that is filing. I said the facts remain the same as they are, except that you don't mention URS at all. And does URS respond under this hypothetical? The facts remain the same. We're in. Okay, explain to me how that works. Because keep in mind that it's Department of Labor's job to decide where that complaint goes. It's not us. It's not like a civil case where we serve the complaint on the defendant. They do. They figure out who's really liable and they did. And they responded. If we could have said it's XYZ Corporation and they could have said, well, no, we think that it's URS, it's your employer, and served it on URS and they appear. The problem is simply, I mean, this entity is not a government entity, so there's no waiver of sum for an immunity problem. Correct. And they, it seems to me, by not saying to the administrative agency, which they didn't, this isn't us and, you know, leave us alone, they've just waived the question. They're essentially saying, you know, we're all the same thing for your purposes and we're going to act that way. I agree with Your Honor. But remember that if this system wasn't broken, none of the problems that Your Honor is envisioning would happen because in 30 days they're supposed to say, they're supposed to tell us whether we have a claim. If we filed it on XYZ and XYZ responded, as you've suggested, we have nothing to do with this, we would have known within 30 days, we have 180 days statute of limitations to file. Within 90, they're supposed to give us a ruling whether we win or lose. They never said we have nothing, leave us alone. That's not what they said. No, but that's my point. He called us X, but our right name is Y, and then they went ahead. No, that's exactly right. But my point is if the administrative system were working, mistakes like you envisioned would be caught within 30 days. But when DOL does nothing for the entire time, then we are forced, you know, without discovery to go forward as we can. With regard to whether DOE is a proper defendant, well, they are properly listed. The Robinson case that we cited in our brief lists them as, you know, they're listed as an employer and there's no requirement in the statute, on a plain reading of the statute, that the employee has to work for the employer. And I think if the court gives proper deference to the decision of the administrative review board that that would be the case. I would like to reserve the remaining time for rebuttal. Okay. Thank you. We'll hear from, you know, a lot of people here. Good morning, Your Honors. I'm Kate Bushman. I'm here on behalf of the United States Department of Energy. Okay. I plan to argue for 10 minutes and then turn it over to my colleague, but I'll watch the clock myself, obviously. Okay. Here the district court properly dismissed Dr. Tamasitis' complaint against the Department of Energy, and it did so for three separate reasons, and they were all, or each of them will sustain the district court's dismissal in this case. First, Dr. Tamasitis failed to properly invoke district court jurisdiction in this case by failing to wait the required one year in the statute. Second, the department. Against DOL. I mean against DOE. Correct, Your Honor. Second, Dr. Tamasitis is not the Department of Energy's employee and therefore does not fall within any waiver of sovereign immunity that would be present in the ERA. We wouldn't get to the second question if you were right on the first. Correct. But I have a lot of problems with the second one. The statute doesn't say anything about having to be an employer of the employee, and if you did that, I mean, this is a case where you can see that you would end up not protecting the whistleblower, or you could well because you have the direct employer saying we were ordered to do this by DOE and B&I, and we have B&I and DOE saying, well, he's not our employee. So, and that can, the way government contractors work these days, that could happen every time and you'd never do what Congress was trying to do. So you'd have to be able to demonstrate there's something in the statute that requires this, and I don't see it. Well, Your Honor, the, actually I think the plain reading would demonstrate that. Oh. The word employee, which is not otherwise helpfully defined in the statute, hasn't accumulated. Well, it's somebody, but it doesn't say it has to be an employee of the employer. Well. So it's any employer and any employee? True. And then it says you can sue any person. Any employee that, and when I say employee, that would invoke the traditional master-servant relationship. But that's a different question. It's a question of employee of whom. And there are other statutes, for example, the National Labor Relations Act that is read that way. You don't have to be an employer of the employee in order to be an employer under the statute responsible for violating the National Labor Relations Act. Your Honor, the, I'm definitely not as familiar with the NLRA as you are, so I'll defer on that. But, Your Honor, this statute does present a pretty straightforward case of, it's called employee protection, Section 5851. You're protecting employees from being, from being retaliated against. Exactly. But the question is who you're protecting them from. You're protecting them from people who are employers, but not necessarily, nothing in the statute says it has to be their employer. Your Honor, beyond the fact that employee does have an accumulated common law meeting to mean a certain thing. Yes. This type of. I mean, you're talking around it, because, yes, they have to be the common law employee of somebody. But when you're a common law employee, you're a common law employee, it's the traditional master-servant relationship. So you would look to see if, pardon me, you would look to see if an employee was engaged in that sort of relationship with an entity that was listed in the process. Not necessarily the entity against whom the charges fell, as long as that entity is, in fact, an employer. An employer absolutely engaged in what Darden defines as that employment relationship. And an employer would have to have control over the manner and means in which an employee does its job. And I think the other parts of the statute that lend support to this are the discrimination that it is targeting. It's specifically targeting discrimination that an employer would take towards its own employee. Because it says no employer may discharge. That's something an employer would. Or otherwise discriminate. Or otherwise discriminate against the employee with respect to his compensation, terms, conditions, or privileges of employment. And that type of discrimination, that really does line up with a traditional master-servant relationship. It also lines up with the relief section that's offered in 5851b2b. And that's relief that actually can really only be afforded by an employer. So if DOE somehow or other manipulates an outcome that they want, like here, for example, but that's alleged here, how does Mr. Thomas Ice ever get to sue DOE? Through a tort claims act? Well, certainly not through this statute, which is created for an employee. Could they bring a tort claims case against the employee? Not for tortious interference, no. So DOE is home free, huh? Well, is there any reason Congress would have wanted that when it's trying to protect whistleblowers? It would have set up a system where DOE can tell the employer to fire this person for retaliatory reasons and nobody's responsible? Well, there's two parts there. First, the factual part is that there's no allegation that DOE ordered him to fire. I'm not asking you that. I'm asking you conceptually. Conceptually. If an entity orders someone to be fired, then that's going to be analyzed in the Darden factors, in Darden analysis. Do they actually exercise control over the manner and means? So your answer is yes. If DOE isn't a co-employer or a joint employer, then that's it. Yes. And I think at this point, I think it's good to understand from Dr. Thomas Ice's brief that he's not alleging and not urging this Court to hold that DOE is a joint employer or an employer under Darden. In fact, he's urging a lower test. He's urging an adoption of a test. Do you want to talk about the exhaustion question? Yes. Thank you. Your Honors, I have discussed it previously with my colleague, and the District Court did properly conclude that Dr. Thomas Ice failed to wait the required year. The complaint was filed on December 15, 2010 with the DOL, and then the District Court complaint was filed in November of 2011. And it was still pending on December 15 or 16, 2011, right? Still pending with the Department of Labor? District Court. District Court, yes. So it's still there. There is a complaint. It's not filed, but it is actually pending in District Court, so you have to look at both points. Yes. Thank you. I don't think you're getting the question. I mean, even though he doesn't file it, there is a District Court action pending more than a year after the filing with DOL. Well, so the statute does have two predicates. So DOL really has a full year to resolve it. It's not like he goes to District Court and says, you know, they had a full year, and they didn't resolve it in the full year. Yes. The Department of Labor does get a full year under it, and Section 5851B1 is the kickoff of the process of the Department of Labor's investigation and adjudication. So there was a complaint filed. It was filed against URS. Let's leave aside the question of why URS, right? Upon receipt of a complaint, the Secretary shall conduct an investigation of the violation alleged in the complaint. Presumably if he had done that, let's assume they would have found that the DOE, and the allegation is the DOE essentially ordered this guy to be fired. I understand you think that isn't true, but suppose they found that, okay? And they investigate it within 30 days, and that's what they found. Then it says that in response to a complaint filed under Paragraph 1, if the Secretary determines that a violation of Subsection A has occurred, or the person who committed such violation, let's say the person who the charge was filed against, to take affirmative action. I mean, could the Secretary in this investigation have said, oh, it's really the DOE who's the problem here, and we're going to order the DOE to do something? Your Honor, it seems to suggest that, you know, as you pointed out, that the Secretary does have authority to order that relief against an entity that is liable for violating Subsection A. Including one that wasn't the charged one. I think that, no, Your Honor, I think that it does still tie itself to the complaint. But at that point, I think that it would be up to the plaintiff, I guess the complainant at that point, to draw in any wrongdoer that couldn't afford or couldn't afford, could afford. Interestingly enough, it doesn't say the Secretary shall order the person who was charged to do something. It says the Secretary shall order the person who committed such violation to do something. Well, conduct an investigation of the violation alleged in the complaint. And when the violation that would be alleged in the complaint would be URS, Inc., for example, in the Jill Dye case. But it's not unusual, and this problem does arise under Title VII, that, you know, they charge such and such a person, but when the agency investigates, if it actually investigates, they find out that there were other people involved. Yes. And obviously the difference that you pointed out earlier with Title VII is that it's not an adjudicative process. This is the Department of Labor attempting to get very quickly, as the statute indicates with its timelines, to a make-whole remedy for any plaintiff that brings an action successfully. My time has run, unless the Court has any further questions for me. You said there were three bases the district courts relied on, and you've only discussed two. Can you just quickly mention what the third one was? The final one was that the district court lacked authority to enter any of the requested relief, the FAR-sweeping injunctive relief under the Energy Reorganization Act. That doesn't throw the case out. It just limits the relief. No, Your Honor, because there has to be a waiver of sovereign immunity, an express waiver of sovereign immunity, for the court to have jurisdiction to order relief, for example, If you're right, then you don't get that relief, but it doesn't throw the case out. No, Your Honor. If they fail to show that their claims, the relief that they seek, falls within a waiver of sovereign immunity, then they can't. They don't get the relief. Then they can't press forward. If this was, for example, a claim. I assume, even if they can't get the relief they were asking for, they would still like to get some compensation from the Department of Energy and in order to let them come back on the job, specific relief. No, Your Honor, they never asked for that below. They never offered to amend to that. They asked for this broad relief, but they didn't say they just wanted an injunction of some kind? An injunction of some kind can't serve as a basis for a waiver of sovereign immunity. That would have to actually appear in the statute. And to say that they don't have any… It doesn't appear in the statute. They can issue injunctions. It specifically says the Department of Energy is an employer subject to the statute. But they can abate the violation, and that's what they say that they want from the Department of Energy. But none of what they're requesting, actually, is to abate the violation. Unless the Court has any further questions? Thank you. Thank you. Good morning. May it please the Court, my name is Matt Daly. I'm joined in court by my law partner, Tim Lawler. We appear on behalf of the URS defendants. We respectfully ask the Court to affirm the district court in every respect. Dr. Tamasitis was confronted with a very narrow motion for summary judgment. It challenged him to come forward with specific facts to create a triable issue regarding whether URS played any role in his removal from the WTP project. Dr. Tamasitis failed to meet that challenge. Judge Succo correctly dismissed this complaint, where the undisputed facts showed that Bechtel ordered the removal, that B and I, Bechtel, excuse me, ordered the surrender of Dr. Tamasitis' access badge, which allowed him physical access to the secured site, that even before Bechtel notified URS of its decision and its order, Bechtel had taken steps to cancel Dr. Tamasitis' access to the site's secure computer system. And finally, that both before and after Dr. Tamasitis identified himself as a whistleblower, URS went to bat for him and tried to get him reinstated on the project. Bechtel simply refused. URS never could and cannot now reinstate Dr. Tamasitis. Dr. Tamasitis has acknowledged that Bechtel's approval would be necessary for his reinstatement, yet he made this strategic or tactical... Well, I assume you're going to tell me these aren't the facts, but let's assume hypothetically they were. Suppose that URS was told by B and I, and I gather this is what's being argued, or by DOE, that this guy has been causing us a lot of trouble by exposing things we don't want to expose, so therefore we want you to get rid of him, right? So in other words, it was explicit that this was the reason. And are you still completely out? First, you are correct, Your Honor. Despite more than 20 depositions and hundreds of thousands of pages of discovery, those are not the facts. But... But that's the contention. You're so predictable. Because URS said he was going to say that, and he went ahead and did it anyway. In that instance... As if we didn't get it. In that instance, Dr. Tamasidis would have a claim against Bechtel. So the answer is... But the question is not about Bechtel. The question is whether he has a claim against your client. Let Bechtel take care of itself. The question is, does he have a claim against your client? If the answer is no, why the preliminary? Just say no and go on with it. Oh, that's not the facts. So what's your answer to the question? No, Your Honor. So they can fire him, even though Bechtel says, we're firing him for being a whistleblower, we're firing him for being, you know, we don't like black people, you know, whatever, women, you know, whatever. And they say, well, if Bechtel doesn't want him here for that reason, too bad, you're gone. And no claim against URS. URS is basically a password for ever improper, assumedly improper, motive Bechtel exercises. If URS had executed the order and done nothing more, there may be a potential for liability. But URS, as soon as the order was given, took steps to go to bat for Dr. Tamasidis. He says you put him in the basement, you never gave him anything to do. You know, I understand all that. I mean, in other words, he is alleging in various ways that you did more than simply do what you were told to do. But that's kind of somewhat beside the point, it seems to me, the legal issue, which is, I mean, somebody said, you know, this guy is black, we don't want any black employees fired. And you're the employer. I mean, because everybody agrees that you're the employer. Correct. URS did not fire him. And that's the crux. URS did. Well, it depends on what you mean by fire. You know, if you say, okay, you now get to sweep the floor, you were still paying your salary, but your job from now on in is you're going to be doing toilets. That's for firing, whether or not you cause firing, you know, if you keep the salary on. I mean, you agree with that. I mean, you can't dispute that. They took him off an interesting, important, significant project that had potential for promotion and career development, and they put him into something else. That's a constructive discharge. I mean, that's not hard. No, Your Honor. Bechtel took him off the project. No, no, but you said if they did nothing else. So the question was, let's say Bechtel orders this for disclosedly improper motives. And you said, well, but they, you know, it's okay because they didn't just carry out Bechtel's order because they gave him this other job. But, you know, that excuse, they give him another job, doesn't really work, right? It's not the giving him the other job that is germane to the liability under the ERA. It is that as soon as Bechtel gave the order, URS fought against it. The record is undisputed. But in the end, in the end, and let's take the hypothetical again. I mean, you have an employer who says, I don't have black people in my job, in these important jobs. Fire him and make him a janitor, right? And you say, oh, I don't disagree with that. I don't want to do it. You should change your mind. And they say, well, now change your mind. And then you do it and you're the employer. So what? That doesn't, you're not responsible then? If we made him a janitor, we may be responsible. The issue is the WTP is Bechtel's site. When Bechtel gave the order that Dr. Kamsitis was not going to work on that site anymore, URS could have terminated him and then we'd have a very different case. Is there a case law on this under parallel statutes, under Title VII of the ADA or ADA or whatever? Has there been a book into that? There is not directly parallel case law that I'm aware of, Your Honor. That's what surprised me. The fundamental issue with respect to the removal from the project is that Bechtel controls the project itself. URS could only do two things. We have sexual harassment cases where the client is making advances towards an employee and the employee complains to her boss, let's say, and says, you know, the client is making advances. And the boss says, well, you know, you just have to go ahead and live with it because it's an important client. And we have cases. I know we have cases. I can't say off the top of my head, but I've been on cases where we've said, no, as an employer, you have a responsibility. It doesn't matter if the client is exercised control and you're responsible. How is this any different? Because URS did not tell him, you just have to deal with it. URS did not tell him, you're going to be a janitor. The record is clear that URS gave Dr. Tamasitis alternative job options. He didn't want to relocate. But at that point, you're certainly not walking out the door of this case. I mean, in other words, then we have a bunch of contested facts. And my understanding is you were making a per se argument. If you don't make a per se argument, it seems to me that you can't get summary judgment. This is not a Title VII case where there are theories of vicarious liability or theories of negligence and failure to monitor and so on and so forth. This is a very narrow case under 5851 where the allegation is that – Right, but my point is this. If you're trying to say something other than we can't be liable because Bechtel told us to fire, to get him off here, and if your argument depends on exactly what you did afterwards and how you treated him afterwards and so on, I don't see that you can get summary judgment on that issue. Maybe it led to being right, but I don't see how you can get summary judgment on it. I understand what you're saying, Your Honor. The alleged adverse employment action in this case is the removal from the WTP and the failure to reinstate. With respect to that issue, it's undisputed that Bechtel gave the order, that URS resisted the order. Dr. Tamasitis acknowledged – So you're making a per se argument. With respect to that, Dr. Tamasitis has then, acknowledging that that argument was tenuous, said, well, they retaliated against me by putting me in the basement. And with respect to that issue, we have a failure of proof. Dr. Tamasitis has acknowledged that he was offered alternative assignments. But you also have been saying that if you had done nothing, if you had not resisted it, it would be different. So it seems to me that you're saying both things. You're saying it's a per se argument. It's not a per se argument. To be liable under the statute, we have to engage in active adverse employment action. The facts of this case are that we did not. We received an order. We resisted the order. So therefore, your position is the one that we outlined earlier, i.e., if I was told, get rid of this guy because he's whistleblowing, and you did it, you're not liable. Except that those are not the facts of this case. But that's your position. Yes, Your Honor. Are you relying at all on the argument that they filed against the wrong entity? Yes. You sort of skipped over that. I just want to know whether you've given up on that. Yes, Your Honor. The exhaustion is not a notice issue. Under the court's decision in Gallo v. Cattle Company, statutorily created exhaustion requirements are mandatory. They cannot be waived in the court's discretion. They cannot be excused with equitable devices. The plaintiff has to exhaust against each defendant and with respect to each claim. The court under the Sarbanes-Oxley. Why don't you just have a waiver problem? I mean, you never told the agency that they have the wrong people and you should dismiss the claim. We absolutely did tell the agency. You told me this is not the right name. The actual name is this, and that's it. And then you went off and defended the whole case. That's correct. And you never said because they filed against the wrong people, the case can't go on. That is correct. We did not say that. So why don't you just waive the issue, period, at the end? Because it's the plaintiff's obligation to initiate his claim against the correct defendants. This plaintiff, it's undisputed, was on notice of who the correct defendants were in November of 2010. Yet he took no action to correct the misidentification of the plaintiffs until September 7th of 2011. But you never even said he should. I mean, your position wasn't that there's a problem here because he named the wrong person. Your position was, by the way, he named the wrong person, but, you know, we're the right person to so-and-so, and we win on the merits. He still has to sue his employer. He still has to initiate the claim within the applicable limitations period, and he still has to exhaust that administrative remedy to vest the court with jurisdiction. I see I'm way over my time, and I don't want to press the Court's indulgence. Thank you. I think you have two and a half minutes left. All right. Thanks, Your Honor. The first point I want to make is that if we have to get it right on the filing, what you're really doing is telling complainants to sue everybody. List 100 names because you have no discovery. You have no way of knowing who the right defendant is, and you hope DOL is going to do it. We can't say that much. We can say when it's pointed out to you that you got the wrong party, then you have to go back and do it right. Right. And they did point it out. Well, in those 30 days, though, they defended, and there was no decision. I mean, if the system was working properly 30 days, DOL could have said you've got the wrong party, go ahead and refile, but that didn't happen. Did you, by the way, get a copy of that response? Say again? Did you get a copy of that response? Not automatically. We happened to get one. We asked for one, and we got a redacted version of that. But we did see what they had said, but, again, we don't have the right to challenge it. We can't do requests for admissions. We just know what they wrote. We have no discovery. But you can check and see, oops, they're right, it is the wrong name, and you could at that point, well within the six months, and you could have refiled against or filed against the right defendant. It seems like that, except we filed against URS Corporation in state court, and if you look at ER 1368, we sued URS Corporation in state court. They never said we're in with another organization. They never denied it. They defended it. They lost summary judgment on civil conspiracy in state court. So it's a corporate shell game who they really are, what defendant. The fact is that they really defended the case, and they appeared. And the second product that we handed up to the court is actually a February 11, 2011 response by DOE that's also an extensive response that for some reason wasn't in the appellate record, but it is in the record of the district court. So we wanted you to know that, again, they extensively responded. But, of course, they did. The problem, I mean, as Judge Spinski just said, the problem with regard to them isn't that you didn't charge them. You did charge them, but you didn't wait the year. Well, that's true. We didn't wait the year. But there's no guidance saying you have to wait a year. It simply says a year after the complaint is filed. DOL's letter that we also showed you is the same thing. So we think that the court would be reading into this one-year requirement something that is not really there. So we would ask that you think, if that is your view, that you think about the Allen solution that's in the unpublished case where, in Allen, the court said, well, we'll stay the proceedings until the year is up as to the second filing. And in that case, it really was a new complaint because there had been a termination. Thank you. Okay. Thank you.
judges: Kozinski, Paez, Berzon